UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>100 F Street, NE<br>Washington, D.C. 20549<br><br>      Plaintiff,<br><br>v.<br><br>WEATHERFORD INTERNATIONAL LTD.<br>4-6 Rue Jean-Francois Bartholoni<br>1204 Geneva, Switzerland,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### CONSENT OF DEFENDANT WEATHERFORD INTERNATIONAL LTD.

1. Defendant Weatherford International Ltd. ("Defendant" or "Weatherford") waives service of a summons and the Complaint in this action, enters a general appearance, and admits to the Court's jurisdiction over Defendant and over the subject matter of this action.

2. Weatherford has entered into a deferred prosecution agreement ("DPA") with the United States Department of Justice, Criminal Division, Fraud Section, and a separate DPA with the United States Attorney's Office for the Southern District of Texas, in which it admits, accepts, and acknowledges responsibility for criminal conduct relating to certain matters alleged in the Complaint in this action. This Consent shall remain in full force and effect regardless of the existence or outcome of any further criminal proceedings arising out of the matters contained in the DPAs.

3. Weatherford hereby consents to the entry of the final judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

    (a) permanently restrains and enjoins Defendant from violation of Sections 13(b)(2)(A), 13(b)(2)(B) and 30A of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(2)(B), 78dd-1];

    (b) orders Defendant to pay disgorgement of $90,984,844 representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $4,399,423.34 for a total of $95,384,267.34 ("disgorgement obligation"). A portion of the Defendant's disgorgement obligation in the amount of $31,646,907 shall be deemed satisfied by Defendant's entry into a written DPA with the U.S. Attorney's Office for the Southern District of Texas, wherein Defendant agrees to make a payment in an amount greater than or equal to $31,646,907 within one year of the entry of the Final Judgment. In the event that Defendant's DPA requires a payment less than $31,646,907, the Defendant acknowledges that its disgorgement obligation will be credited up to the amount of the payment required by the DPA, with the remaining balance due and payable to the SEC within 14 days of payment pursuant to the DPA in the parallel criminal proceeding.

    (c) orders Defendant to pay a civil penalty in the amount of $1,875,000 under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

    (d) orders Defendant, within ninety (90) calendar days of the entry of the

Final Judgment, to retain an independent corporate compliance monitor and provide corporate compliance reporting pursuant to paragraphs 4 through 36 of this Consent.

## Corporate Compliance Monitor

*Retention of Monitor and Term of Engagement*

4. The Company shall engage an independent compliance monitor (the "Monitor") not unacceptable to the Commission staff within sixty (60) calendar days of the entry of the Final Judgment. The Monitor shall have, at a minimum, the following qualifications: (i) demonstrated expertise with respect to the Foreign Corrupt Practices Act ("FCPA") and other applicable anti-corruption laws, including experience counseling on FCPA issues; (ii) experience designing and/or reviewing corporate compliance policies, procedures, and internal accounting controls, including FCPA and anti-corruption policies, procedures, and internal accounting controls; (iii) the ability to access and deploy resources as necessary to discharge the Monitor's duties as described in the Consent; and (iv) sufficient independence from the Company to ensure effective and impartial performance of the Monitor's duties as described in the Consent. The Commission staff may extend the Company's time period to retain the Monitor in its sole discretion. If the Monitor resigns or is otherwise unable to fulfill his or her obligations as set out herein, the Company shall retain a Monitor that is not unacceptable to the Commission staff within thirty (30) calendar days.

5. The Company shall retain the Monitor for a period of not less than eighteen (18) months from the date the Monitor is retained (the "Term of the Monitorship"), unless the Commission staff finds, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the Monitor, in which case the Term of the Monitorship may

be terminated early. The Term of the Monitorship can be extended to a total of thirty-six (36) months from the date the Monitor is retained, as set forth below. At the conclusion of the Monitorship, the Company shall enter a period of self-reporting for a period of eighteen (18) months from the termination of the Monitorship not to exceed thirty-six (36) months from the date the Monitor is retained.

6. During the Term of the Monitorship and for a period of two years from completion of the Monitorship, neither the Company nor any of its then current or former affiliates, subsidiaries, directors, officers, employees, or agents acting in their capacity as such shall enter into, or discuss the possibility of, any employment, consultant, attorney-client, auditing, or other professional relationship with the Monitor.

*Company's Obligations*

7. The Company shall cooperate fully with the Monitor, and provide the Monitor with access to all information, documents, records, facilities, and employees as reasonably requested by the Monitor. The Company shall use its best efforts to provide the Monitor with access to the Company's former employees and its third-party vendors, agents, and consultants.

8. The parties agree that no attorney-client relationship shall be formed between the Company and the Monitor. In the event that the Company seeks to withhold from the Monitor access to information, documents, records, facilities, current or former employees of the Company, its third-party vendors, agents, or consultants that may be subject to a claim of attorney-client privilege or to the attorney work-product doctrine, or where the Company reasonably believes production would otherwise be inconsistent with applicable law, the Company shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor. If, during the Term of the Monitorship, the Monitor believes that the Company is

unreasonably withholding access on the basis of a claim of attorney-client privilege, attorney work-product doctrine, or other asserted applicable law, the Monitor shall promptly notify the Commission staff.

9. Any disclosure by the Company to the Monitor concerning corrupt payments, false books and records, and internal accounting control failures shall not relieve the Company of any otherwise applicable obligation to truthfully disclose such matters to the Commission staff.

*Monitor's Mandate*

10. The Monitor shall evaluate the effectiveness of the internal accounting controls, record-keeping, and financial reporting policies and procedures of the Company as they relate to the Company's current and ongoing compliance with the anti-bribery, books and records, and internal accounting controls provisions of the FCPA and other applicable anti-corruption laws (the "anti-corruption laws"), and make recommendations reasonably designed to improve the effectiveness of the Company's internal accounting controls and corporate compliance program (the "Mandate"). This Mandate shall include an assessment of the Board of Directors' and senior management's commitment to, and effective implementation of, the corporate compliance program. In carrying out the Mandate, to the extent appropriate under the circumstances, the Monitor may coordinate with Company personnel, including in-house counsel, compliance personnel, and internal auditors. The Monitor may rely on the product of the Company's processes, such as the results of studies, reviews, sampling and testing methodologies, audits, and analyses conducted by or on behalf of the Company, as well as the Company's internal resources (e.g., legal, compliance, and internal audit), which can assist the Monitor in carrying out the Mandate, provided the Monitor has confidence in the quality of those resources and the

use of those resources are maintained independent of the Company's normal functions to ensure the Monitor's independence.

11.     During the Term of the Monitorship, the Monitor shall conduct an initial review and a follow-up review and prepare an initial report and a follow-up report, and issue a Certification Report if appropriate, as described below.

*Initial Review and Report*

12.     Promptly upon being retained, the Monitor shall prepare a written work plan, which shall be submitted to the Company and the Commission staff for comment no later than thirty (30) calendar days of being retained.

13.     In order to conduct an effective initial review and to understand fully any existing deficiencies in the Company's internal accounting controls and corporate compliance program, the Monitor's work plan shall include such steps as are reasonably necessary to understand the Company's business and FCPA risks faced throughout its business. The steps shall include:

    a.    inspection of relevant documents, including the internal accounting controls, record-keeping, and financial reporting policies and procedures as they relate to the Company's compliance with the books and records, internal accounting controls and anti-bribery provisions of the FCPA;

    b.    onsite observation of selected systems and procedures comprising the Company's corporate compliance program, including anti-corruption compliance procedures, internal accounting controls, record-keeping, due diligence, and internal audit procedures, including at sample sites;

    c.    meetings with, and interviews of, relevant Company employees, officers, directors, its third-party vendors, agents, or consultants and other persons at mutually convenient times and places; and

    d.    risk-based analyses, studies and testing of the Company's corporate compliance program.

14. The Monitor may take such steps as are reasonably necessary to develop an understanding of the facts and circumstances surrounding prior FCPA violations that may have occurred, but shall not conduct his or her own inquiry into those historical events.

15. The Company and Commission staff shall provide any comments concerning the work plan within fifteen (15) calendar days in writing to the Monitor and the other party. Any disputes between the Company and the Monitor with respect to the written work plan shall be decided by the Commission staff in its sole discretion. Following comments by the Company and Commission staff, the Monitor will have fifteen (15) calendar days to make revisions to the initial work plan.

16. The initial review shall commence no later than sixty (60) calendar days from the date of the engagement of the Monitor (unless otherwise agreed by the Company, the Monitor, and the Commission staff). The Monitor shall issue a written report within one hundred twenty (120) calendar days of commencing the initial review, setting forth the Monitor's assessment and, if necessary, making recommendations reasonably designed to improve the effectiveness of the Company's internal accounting controls and corporate compliance program as they relate to the Company's compliance with the anti-corruption laws. The Monitor should consult with the Company concerning his or her findings and recommendations on an ongoing basis and should consider the Company's comments and input to the extent the Monitor deems appropriate. The

Monitor may also choose to share a draft of his or her report with the Company and Commission staff prior to finalizing them. The Monitor shall provide the report to the Board of Directors of the Company and contemporaneously transmit a copy to Commission staff.

17. Within ninety (90) calendar days after receiving the Monitor's initial report, the Company shall adopt and implement all recommendations in the report, provided, however, that as to any recommendation that the Company considers unduly burdensome, impractical or costly, or inconsistent with applicable law or regulation, the Company need not adopt that recommendation at that time, but may submit in writing to the Monitor and the Commission staff within fifteen (15) days of receiving the report, an alternative policy, procedure, or system designed to achieve the same objective or purpose.

18. In the event the Company and the Monitor are unable to agree on an acceptable alternative proposal, the Company shall promptly consult with the Commission staff. Any disputes between the Company and the Monitor with respect to the recommendations shall be decided by the Commission staff in its sole discretion. The Commission staff may consider the Monitor's recommendation and the Company's reasons for not adopting the recommendation in determining whether the Company has fully complied with its obligations. Pending such determination, the Company shall not be required to implement any contested recommendation(s).

19. With respect to any recommendation that the Monitor determines cannot reasonably be implemented within ninety (90) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Commission staff.

EXHIBIT A

*Follow-Up Review*

20.     Within sixty (60) calendar days after the issuance of the initial report, the Monitor shall submit a written work plan for the follow-up review to the Company and Commission staff. The Company and Commission staff shall provide any comments concerning the work plan within fifteen (15) calendar days in writing to the Monitor. Any disputes between the Company and the Monitor with respect to the written work plan shall be decided by the Commission staff in its sole discretion. Following comments by the Company and Commission staff, the Monitor will have fifteen (15) calendar days to make revisions to the initial work plan.

21.     The follow-up review shall commence no later than ninety (90) calendar days after the issuance of the initial report (unless otherwise agreed by the Company, the Monitor and the Commission staff). The Monitor shall issue a written follow-up report within one hundred-twenty (120) calendar days of commencing the follow-up review. The follow-up report shall set forth the Monitor's assessment of, and any additional recommendations regarding, the Company's internal accounting controls and corporate compliance program as they relate to the Company's compliance with the anti-corruption laws; the Monitor's assessment of the implementation by the Company of any recommendations made in the initial report; and the Monitor's assessment of the commitment of the Company's Board of Directors and senior management to compliance with the FCPA.

22.     Within ninety (90) calendar days after receiving the Monitor's follow-up report, the Company shall adopt and implement all recommendations in the report, provided, however, that as to any recommendation that the Company considers unduly burdensome, impractical or costly, or inconsistent with applicable law or regulation, the Company need not adopt that recommendation at that time, but may submit in writing to the Monitor and the Commission staff

within fifteen (15) days of receiving the report, an alternative policy, procedure, or system designed to achieve the same objective or purpose.

23. In the event the Company and the Monitor are unable to agree on an acceptable alternative proposal within fifteen (15) days, the Company shall promptly consult with the Commission staff. Any disputes between the Company and the Monitor with respect to the recommendations shall be decided by the Commission staff in its sole discretion. The Commission staff may consider the Monitor's recommendation and the Company's reasons for not adopting the recommendation in determining whether the Company has fully complied with its obligations. Pending such determination, the Company shall not be required to implement any contested recommendation(s).

24. Throughout the Term of the Monitorship, the Monitor shall disclose to the Commission staff any credible evidence that corrupt or otherwise suspicious transactions occurred, or payments of things of value were offered, promised, made or authorized by any entity or person within the Company, or any entity or person working directly or indirectly for or on behalf of the Company, or that related false books and records may have been maintained by or on behalf of the Company. The Monitor shall contemporaneously notify the Company's General Counsel, Chief Compliance Officer, or Audit Committee for further action unless at the Monitor's discretion he or she believes disclosure to the Company would be inappropriate under the circumstances. The Monitor shall address in his or her reports the appropriateness of the Company's response to all improper activities, whether previously disclosed to the Commission staff or not.

*Certification of Compliance*

25. Within ninety (90) calendar days of the issuance of the follow-up report, the Company shall certify in writing to the Commission staff with copy to the Monitor that the Company has adopted and has implemented, or is implementing on an agreed-to schedule, all of the Monitor's recommendations in the initial and follow-up report(s), or the agreed-upon alternatives.

26. Within ninety (90) calendar days of the issuance of the follow-up report, if the Monitor believes that the Company's corporate compliance program is reasonably designed and implemented to detect and prevent violations of the anti-corruption laws and is functioning effectively, the Monitor shall submit to the Commission staff a written report ("Certification Report") that certifies the Company's compliance with its corporate compliance obligations under the Final Judgment. The Certification Report shall set forth an assessment of the sustainability of the Company's remediation efforts and may also recommend areas for further follow-up in the Company's future self-reporting. The Monitor may extend the time period for issuance of the Certification Report by fifteen (15) calendar days with prior written approval of the Commission staff. Fourteen (14) calendar days prior to issuing the Certification report, the Monitor shall orally notify the Commission staff of whether he or she expects to be able to certify as provided herein.

*Termination or Extension of the Monitorship*

27. If at the conclusion of the ninety (90) calendar-day period following the issuance of the follow-up report, the Commission staff concludes, as informed by the Monitor's Certification Report, that the Term of Monitorship should be extended, the Term of the Monitorship shall be extended for one year. While the Term of Monitorship can be extended at

EXHIBIT A

the sole discretion of the Commission staff, the parties anticipate that it may be extended if the Monitor is unable to certify as to the reasonable implementation by the Company of his or her recommendations or that the Company's internal accounting controls and corporate compliance program are reasonably designed and effectively implemented to prevent violations of the FCPA.

28. Under such circumstances, the Monitor shall commence the second follow-up review no later than sixty (60) calendar days after the Commission staff concludes that the Company has not successfully satisfied its compliance obligations under the Final Judgment (unless otherwise agreed by the Company, the Monitor, and the Commission staff). The Monitor shall issue a written follow-up report within one hundred-twenty (120) calendar days of commencing the second follow-up review in the same fashion as set forth in Paragraph 16 with respect to the initial review and in accordance with the procedures for follow-up reports set forth in Paragraphs 20-23. A determination to terminate the Monitorship shall then be made in accordance with Paragraph 27.

29. If, after completing the second follow-up review, the Commission staff again concludes that the Company has not successfully satisfied its obligations under the Agreement with respect to the Monitor's Mandate, the Term of the Monitorship shall be extended until expiration of the Agreement, and the Monitor shall commence a third follow-up review within sixty (60) calendar days after the Commission staff concludes that the Company has not successfully satisfied its compliance obligations under the Agreement (unless otherwise agreed by the Company, the Monitor, and the Commission staff). The Monitor shall issue a written follow-up report within one hundred-twenty (120) calendar days of commencing the third follow-up review in the same fashion as set forth in Paragraph 16 with respect to the initial review and in accordance with the procedures for follow-up reports set forth in Paragraphs 20-23

*Extensions of Time*

30. Upon request by the Monitor or the Company, the Commission staff may extend any procedural time period set forth above for good cause shown.

*Self-Reporting Period*

31. If the Term of Monitorship is completed in less than thirty-six (36) months from the date of the retention of the Monitor, the Company shall enter into a Self-Reporting Period until such time as the Term of Monitorship and Self-Reporting Period total thirty-six (36) months.

32. During the Self-Reporting Period, the Company shall provide a written report to the Commission staff every one hundred-eighty (180) calendar days regarding whether the Company's corporate compliance program is reasonably designed to detect and prevent violations of the anti-corruption laws, including: (i) additional remedial measures undertaken since the conclusion of the Term of Monitorship; (ii) results of internal audit or other testing done regarding the operation of its corporate compliance program; (iii) any changes to its compliance risk profile or any changes to its major business lines or organizational structure; and (iv) proposals for ensuring compliance with the anti-corruption laws, including the proposed scope of subsequent reviews.

33. The Company shall also disclose to the Commission staff any credible evidence that corrupt or otherwise suspicious transactions occurred, or payments of things of value were offered, promised, made or authorized by any entity or person within the Company, or any entity or person working directly or indirectly for or on behalf of the Company, or that related false books and records may have been maintained by or on behalf of the Company, that it learns of

that occurred after the date of this Consent and was not previously disclosed to the Commission staff.

*Confidentiality of Reports*

34. The reports submitted by the Monitor and the periodic reviews and reports submitted by the Company will likely include confidential financial, proprietary, competitive business or commercial information. Public disclosure of the reports could discourage cooperation, impede pending or potential government investigations or undermine the objectives of the reporting requirement. For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except (i) pursuant to court order, (ii) as agreed to by the parties in writing, (iii) to the extent that the Commission determines in its sole discretion that disclosure would be in furtherance of the Commission's discharge of its duties and responsibilities, or (iv) is otherwise required by law.

*Additional Requirements*

35. Pursuant to a settlement agreement between the Company and the U.S. Department of Commerce, Office of Export Enforcement, entered into in 2013, the Company will conduct external audits of the Company's compliance with U.S. export control laws and regulations (the "Audit Reports"). The Company will provide copies of the Audit Reports simultaneously to the Commission staff.

*Address for All Written Communications and Reports*

36. All reports or other written communications by the Monitor or the Company directed to the Commission staff shall be transmitted to the Chief of the FCPA Unit and to Tracy L. Price, Assistant Director, Division of Enforcement, U.S. Securities and Exchange Commission, 100 F Street, N.E., Washington, DC. 20549.

EXHIBIT A

37. Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

38. Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

39. Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

40. Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

41. Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

42. Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

43. Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability.

Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that it shall not be permitted to contest the factual allegations of the Complaint in this action.

44. Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant acknowledges its DPAs for related criminal conduct described in paragraph 2 above, and agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the Complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take

legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

45. Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

46. In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

EXHIBIT A

47. Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

48. Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: 10/28/13

Weatherford International Ltd.

By: _____
Alejandro Cestero
Vice President, Co-General Counsel and Corporate Secretary
Weatherford International Ltd.
4-6 Rue Jean-Francois Bartholoni
1204 Geneva, Switzerland

On October 28, 2013, Alejandro Cestero, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent with full authority to do so on behalf of Weatherford International Ltd. as its Vice President, Co-General Counsel and Corporate Secretary.

_____
Notary Public
Commission expires:

Approved as to form:

_____
F. Joseph Warin, Esq.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W
Washington, DC 20036-5306
Attorney for Defendant

KATHLEEN A. MARINO
Notary Public, State of Texas
My Commission Expires
March 07, 2016

EXHIBIT A